UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK



-------------------------------------

KENNETH PAPINEAU and VERONICA
PAPINEAU, OLIVER HILL, and
SUMMER ROCKWELL,

              Plaintiffs,

    v.

JOHN DILLON, Individually and as
Sheriff of Onondaga County and
THE COUNTY OF ONONDAGA,

              Defendants.

AFFIDAVIT IN RESPONSE
TO ORDER TO SHOW CAUSE

Civil Action No.: 93-CV-491

Honorable F. Scullin

-------------------------------------

STATE OF NEW YORK   )
COUNTY OF ONONDAGA  ) ss.:

    EDWARD F. GERBER, ESQ., being duly sworn deposes and states:

    1. That I am an attorney duly admitted to practice before this Court and represent John Dillon, individually, regarding this Order to Show Cause.

    2. The motion is seeking relief for preliminary injunction against Sheriff Dillon and the County of Onondaga with reference to the acts of John Dillon in his official capacity as the elected Sheriff of Onondaga County.

    3. Sheriff Dillon does not contest the fact that State Law Enforcement Agencies have jurisdiction over crimes committed upon Onondaga Nation Territory, and has never taken a position to the contrary.

    4. That the state of affairs, as alleged in the moving papers

1

of the Plaintiffs, is somewhat exaggerated insofar as Route 11 is concerned.

5. The Onondaga Nation Governing Body essentially erected pickets and enforced a boycott to protect and enforce their internal policy on Indian Nation Territory. Although initially the aforesaid did impinge on the free flow of traffic on Route 11 at this area, the situation was soon corrected.

6. Sheriff Dillon has agreed and directed that Route 11 be maintained as a viable thoroughfare and will order the removal of any traffic impediments to Route 11, if that should occur.

7. Prior to 1979, there was a continual problem concerning criminal law enforcement with the Onondaga Nations, often times resulting in confrontations with the Governing Body of said Nations and threats of potential violence.

8. In 1979, Sheriff Dillon, and the then District Attorney, finally negotiated and agreed to a working arrangement between law enforcement authorities and the Governing Body of the Onondaga Nations to alleviate these past problems. (Exhibit A, attached hereto.)

9. This agreement has worked well. Since its inception, at no time have the Chiefs of the Onondaga Nation refused to surrender a fugitive to Sheriff Dillon, and in many cases, they have actually cooperated in producing a fugitive to the Sheriff.

10. This policy solely controls entry onto the Onondaga Nations. Any resident of said Nation may at any time file a

complaint at the Office of the Sheriff to initiate an investigation regardless of jurisdictional issues.

11. The policy of the Sheriff, in accordance with the agreement hereinabove mentioned, makes no reference to race, sex, religion, etc.

12. The policy simply directs Sheriff's Deputies in the manner of responding to complaints on Nation Territory in accordance with the aforesaid agreement and recognizing Nation Sovereignty.

13. Additionally, in the matter for which the preliminary injunction is sought, Sheriff's Deputies have responded and completed their investigation.

14. Plaintiffs' concern apparently is to maintain their business establishments contrary to the regulations of the Nations Governing Body.

15. They seek to restrict the decisions and enforcement of Nation Territorial Law by utilizing the Onondaga County Sheriff's Department in a criminal forum as opposed to a civil forum.

16. If the Court vacates the policy of the Sheriff's Department heretofore referred to, it is obvious that Plaintiffs will initiate numerous complaints, contrived or otherwise, seeking to defeat the sovereignty of Indian Nation Law.

17. It is respectfully submitted that this situation will become exacerbated to the point where violence and unnecessary injury may occur.

18. Under the present working arrangement, no one is being

denied any of their rights based upon their race.

20. Plaintiffs allege they may suffer irreparable harm. This is conclusory. Any harm may only be generated by Plaintiffs failure to abide by Onondaga Nation Laws. Such perceived harm has no relation to the subject policy of the Sheriff's Department.

WHEREFORE, Deponent respectfully prays that this Court not issue a preliminary injunction as requested herein, and provide a hearing for any unresolved questions of fact which the Court may deem appropriate.

_____
EDWARD F. GERBER

Sworn to before me this

20th day of April 1993.

_____
NOTARY PUBLIC

TO: John J. Brunetti, Esq.
    121 East Water Street
    Syracuse, New York 13202

    Jack Schultz, Esq.
    333 East Onondaga Street
    Syracuse, New York 13202

MARY ANN CERRETANI
Notary Public in the State of New York
Qualified in Onondaga Co. No. 4630596
My Commission Expires 5/31/94

4

# ONONDAGA COUNTY SHERIFF'S DEPARTMENT

## WRITTEN DIRECTIVE

ORDER TYPE: Standard Operating Procedure  ORDER NUMBER: SOP-C-4001-88
DATE OF ISSUE: 29 February 1988           ORDER RESCINDED:
EFFECTIVE DATE: 29 February 1988          ORDERS AMENDED: 13 November 92
CANCEL ON:                                AUTHORITY: Sheriff J.C. Dillon
SUBJECT: Onondaga Nation Response
INDEX REFERENCE: Reservation, Response To    DISTRIBUTION: All Personnel

---

This order consists of the following numbered sections:

.00 TITLE
.01 PURPOSE
.02 POLICY
.03 NORMAL PATROL OPERATIONS
.04 CALLS FOR SERVICE
.05 FOLLOW-UP INVESTIGATIONS
.06 ARRESTS/WARRANTS PROCEDURE
.07 NOTIFICATIONS

.00 TITLE

   S.O.P. Onondaga Nation Response

.01 PURPOSE

   This order supercedes all previous orders and memoranda regarding Sheriff's Department responses to the Onondaga Nation.

.02 POLICY

   The Onondaga County Sheriff's Department, in accordance with provisions of Federal Law and the Treaty of the Six Nations, in attempting to maintain the established peace and friendship with the Onondaga Nation and allow its members the free use and enjoyment of their lands, has established this standard operating procedure for response to incidents which occur on the Onondaga Nation.

.03 NORMAL PATROL OPERATIONS

   a) There shall be no normal patrol operations within the Onondaga Nation.

   b) Pursuits of non-indians may continue onto the Nation with permission of one of the Chiefs. Pursuing patrols shall proceed with extreme caution. Pursuits of Nation inhabitants shall cease at the Nation boundary. A warrant for the individual shall be obtained if possible.

1 of 3

c)  If an emergency response requires travel through the Nation, the patrol shall use emergency lights and drive with extreme caution. The siren shall not be used.

## .04 CALLS FOR SERVICE

a)  Sheriff's Department patrols shall respond to calls for service on the Onondaga Nation. A Nation Chief, as listed in section .07, will be asked for permission to respond onto the Nation. It should be noted that at times a large number of residents may gather to observe investigations. This is a requirement of tribal law and may be cause for caution but not alarm. The Nation requires residents to observe and report all matters to the Chief of the Nation.

b)  <u>Alarm Calls</u>: Upon receipt of an alarm activation, patrols will respond to the Onondaga Nation line. The Chiefs will be notified for permission to continue. If permission is denied, the patrols are to clear code 9 on an M.I.R. and return to routine patrol.

c)  <u>Accidents</u>: PDAA's and PIAA's occurring on U.S. Route 11 at Quarry Road (Route 81 exit) or entrance will be responded to upon receipt. The Watch sergeant or lieutenant shall also be advised and an attempt made to contact the chiefs as listed.

If permission to respond onto the Nation is denied, the complainant shall be notified and asked to meet with a Deputy off the Nation to report for the complaint.

## .05 FOLLOW-UP INVESTIGATIONS

A Nation Chief shall be contacted for permission before a follow-up investigation on the Nation commences. Follow-ups that are conducted off Nation land do not require any notifications.

## .06 ARREST/WARRANT PROCEDURE

If a suspect is identified during an investigation, a Nation Chief may be requested to surrender the suspect for prosecution. If the Chief surrenders the suspect, he shall be processed per normal procedures. If the council decides not to surrender a suspect and the complainant still desires prosecution and all the elements of a crime are met, a warrant shall be obtained as soon as practical after a suspect has been identified. It is not necessary to obtain permission from a Nation Chief to obtain a warrant. Warrants shall be forwarded to the Warrants Investigation Unit for processing and follow-up.

## .07 NOTIFICATIONS

a)  The E-911 Control Center shall, during office hours, notify the Sheriff or Undersheriff of all responses or incidents related to the Onondaga Nation that are or reasonably expected to be of extenuating circumstances. At all other times the Department Duty Commander

shall be notified and he shall be responsible for Sheriff and Undersheriff Notifications. (Sheriff - hm #478-8208, page #441-6800, radio 4799) (Undersheriff - hm #487-1750, page #441-4901, radio 4798).

b) Those persons to call regarding Nation responses are:

|  | Cell Phone | Home # |
|---|---|---|
| Chief Edwin Cook | 436-2891 | 469-1875 |
| Chief Ollie Gibson | 447-6763 | 469-8814 |
| Chief Leon Shenandoah | 447-8362 | 469-8507 |
| Chief Paul Waterman |  | 446-3965 (City) |
|  |  | 469-8505 (Daughters) |
| Chief Irving Powless, Jr. | 447-6784 | 492-4210 |
| Chief Norman Powless |  | 469-0257 |
| Chief Ambrose Gibson |  | 492-6738 |
| Chief Vince Johnson |  | 677-7786 |

This list shall not be amended without the permission of the Sheriff.