

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
-------------------------------------
KENNETH PAPINEAU and VERONICA
PAPINEAU, OLIVER HILL, and SUMMER
ROCKWELL,

            Plaintiffs,

vs.

JOHN DILLON, individually, and as
Sheriff of Onondaga County and THE
COUNTY OF ONONDAGA,

            Defendants.
-------------------------------------

**PLAINTIFFS' RESPONSE**
**TO ONONDAGA NATION'S**
**MEMORANDUM OF LAW**

Civil Action No. 93-CV-491

**ORIGINAL**

## AS TO THE SOVEREIGNTY ARGUMENT:

On page 4, counsel refers to an excerpt from an Indian Law book and argues that this excerpt shows that the issue is complex. Nevertheless, the excerpt reads on page 413 that if a specific statute such as Title 25 USC § 232 applies, "State Courts have jurisdiction". The remainder of the excerpt has nothing to do with the issue of law enforcement within Indian country in the State of New York.

At page 8, counsel makes a rather definitive statement that "the Onondaga Nation has retained jurisdiction for law enforcement on the Nation, including the power to punish tribal members" and cites U.S. v. Wheeler, 435 U.S. 313, 322, n.18.

The Wheeler case footnote 18 says, "thus, unless limited by treaty or statute, the tribe has the power to determine tribe membership, to...regulate domestic relations among tribe members,... and to prescribe rules for the inheritance of property". 435 US at 1085. (Emphasis added).

The <u>Wheeler</u> case is irrelevant because that case dealt with the power of the Navajo tribal Courts. The United States Congress has never granted the State of Arizona jurisdiction over the Navajo reservation, as was done by the Federal Congress concerning all Indian Country in the State of New York. Thus, all of these quotes are meaningless because they were not made in the context of a special jurisdictional statute such as 25 USC § 232.

In addition, what the Supreme Court actually stated was "<u>but until Congress acts</u>, the tribes retain their existing sovereign powers. In summary, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status". 435 US at 323. (Emphasis added). Congress did act in enacting. 25 USC § 232.

### AS TO THE RACIAL DISCRIMINATION ARGUMENT:

At page 5 counsel relies upon the <u>Morton</u> case. The <u>Morton</u> case dealt with the power of Congress to grant preferential treatment to Indians in Federal hiring which the Federal authorities had been doing since 1834. <u>Morton</u>, 417 US at 514. A reading of the <u>Morton</u> case clearly shows that the policy involved was one of affirmative action. <u>Morton</u> was a racial preference case, not a racial discrimination case.

At page 6 counsel relies upon the <u>Fisher</u> case. The only thing that the <u>Fisher</u> case had to say about discrimination was that the tribal Court's power did not result in racial discrimination. The statement made in <u>Fisher</u> was made in the context of a tribal court having jurisdiction. We do not have that here. The <u>Fisher</u> case relied on the <u>Morton</u> case. This Court is urged to

read the last paragraph of the <u>Morton</u> case: "As long as the special treatment can be tied rationally to fulfillment of Congress' unique obligation toward Indians, such legislative judgment will not be disturbed". 417 US at 555.

The United States Congress made a "judgment" in discharging its "unique obligation toward Indians" in the State of New York by making a legislative judgment in 1948 that Indian habitants of Indian reservations in the State of New York needed police protection like everyone else. That is why the Congress passed Title 25 USC § 232. The policy of the sheriff is in direct contravention of that judgment.

### AS TO THE NEW POLICY:

The Court has also asked for a specification as to what specific aspects of the new policy dated May 5, 1993, are unconstitutional. The Court is respectfully directed to page 2 of Plaintiffs' Memorandum filed May 7, 1993, which is incorporated herein. Basically:

    1. Section .03(a) provides that there shall be "no normal patrol operations within the Onondaga Nation". Such policy discriminates against the occupants of such area on the basis of their race.

    2. The "pursuit policy" set forth in § .03(b) discriminates on the basis of race.

    3. Section .04(a) provides that permission must be requested from a Nation chief in order for there to be a response to a call for service. This is again is discrimination based upon race.

4. Section .04(b) provides the procedure when permission is denied.

5. Section .04(c) provides that if permission is not granted, response to alarm will not occur accept as set forth in paragraph (e) for an "in progress incident involving a threat to life or serious injury".

6. Section .05 provides that permission must be sought and granted for any follow-up investigation.

In short, all the new policy does is attempt to assuage this Honorable Court's concerns expressed at oral argument concerning "an in progress incident involving a threat to life or serious injury to an individual". The policy is still racially discriminatory based upon the previous law submitted to the Court.

## AS TO THE NECESSARY PARTY ARGUMENT:

With regard to the position of the Onondaga Nation concerning its claim that this case should be dismissed unless it is joined as an indispensable party, Plaintiffs have the following response. If the Onondaga Nation already knows that it will plead sovereign immunity, how can it claim that it is an indispensable party? If a party is immune, it cannot be indispensable!

The very introductory language of Rule 19(a) provides that only persons who are subject to service of process and whose joinder will not deprive the Court of jurisdiction over the subject matter need to be joined as parties! The last sentence of Rule 19(a) also provides that if the Onondaga Nation does not want to participate in this lawsuit, then it shall be dismissed from the action.

-4-

As a result, the Court must deal with the dismissal motion based upon Rule 19(b). Based upon the factors set forth in that subdivision, the obvious way to accommodate everyone is for the Court to treat the filings for the Onondaga Nation as a petition to intervene and grant the petition pursuant to Rule 24 of the Federal Rules of Civil Procedure.

Plaintiffs submit that the Onondaga Nation has petitioned this Court to file a brief as amicus curiae. In that brief, the Nation at the same time asks to be made a party and knows, in advance, that it will allege sovereign immunity if it is served. First of all, Plaintiffs submit that the Onondaga Nation should not be able to "bootstrap" its way into getting the Court to dismiss this case. But that matters not because this Court has brought powers under Rule 19(b) which allows the Court to exercise its discretion "by shaping of relief, or other measures" to avoid or lessen prejudice. Basically, what this Court may do, as was done in a similar case, is to treat the amicus curiae brief, together with its substance as a petition to intervene and grant the petition pursuant to Rule 24(b). See generally <u>Farina v. Mission Investment Trust</u>, 615 F.2d 1068 (5th Cir. 1980). In addition, the Court is respectfully requested to consider its powers under Rule 21 which allows the Court, on its own motion, to take whatever action in adding or dropping parties at any stage on such terms that are just.

### AS TO THE STANDING ARGUMENT:

With regard to the "standing" claim, counsel's reliance upon <u>Lyons</u>, <u>O'Shea</u>, <u>Allen</u>, and <u>Palmer</u> is misplaced. <u>Palmer</u> involved

-5-

"street files" maintained by the Chicago Police Department; <u>Allen</u> dealt with a taxpayer lawsuit concerning the tax exempt status allowed to private schools which discriminated; <u>O'Shea</u> had to do with a contempt citation; and <u>Lyons</u> had to do with a choke hold procedure employed by a police department. The Supreme Court made it clear in <u>Lyons</u> that if it were a deliberate policy then in effect, the result might have been different. <u>Los Angeles v. Lyons</u>, 461 US 95, 104 (1983).

Dated: May 27, 1993

                          Respectfully submitted,

                          _____
                          JOHN J. BRUNETTI, ESQ.
                          Attorney for Plaintiffs
                          ~~121~~ East Water Street
                          Syracuse, New York  13202
                          (315)  471-1212
                          Bar Roll # 101241

TO:  Lawrence Williams, Esq.
     Edward Gerber, Esq.
     Joseph Heath, Esq.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
------------------------------------------------
KENNETH PAPINEAU and VERONICA PAPINEAU,
OLIVER HILL, and SUMMER ROCKWELL,         Index No.: 93-2137

           Plaintiffs               **CERTIFICATE OF SERVICE**
                                    **BY MAIL**
vs.

JOHN DILLON, individually, and as
Sheriff of Onondaga County and
THE COUNTY OF ONONDAGA,

           Defendants.
------------------------------------------------

     The undersigned being duly sworn, deposes and says that:

     Deponent is not a party to the action, is over 18 years of age and resides at 15 Birch Road, Syracuse, New York.

     That on May 28, 1993, deponent served the annexed PLAINTIFFS' RESPONSE TO ONONDAGA NATION'S MEMORANDUM OF LAW by mailing a copy of same

TO:   LAWRENCE WILLIAMS, ESQ.
      County Attorney
      Department of Law
      421 Montgomery Street, 10th Floor
      Syracuse, New York   13202

      EDWARD GERBER, ESQ.
      825 University Building
      Syracuse, New York   13202

      JOSEPH J. HEATH, ESQ.
      716 East Washington Street
      Suite 104
      Syracuse, New York   13210

the address(es) designated by said individual(s) for that purpose.

                                                   */s/ Jill Arlukiewicz*
                                                   Jill Arlukiewicz